The Attorney General of the State brought quo warranto
proceedings to test the validity of the franchise claimed herein by the respondent.
A franchise is a special privilege conferred upon one or more individuals or a corporation by governmental authority to do something that cannot be done of common right. Leonard et al.
v. Baylan Street Wharf Co., 59 Fla., 547, 52 So.2d 718, 31 L.R.A. (N.S.) 636; 26 C. J. 1008.
The right to establish and maintain a toll bridge is a franchise. A grant from a sovereign power is essential to the creation of a franchise. Subject to organic limitations, the Legislature may grant franchises. 26 C. J. 1013, 1025. If the legislative power to grant franchises may be delegated when the franchise directly affects the rights and prerogatives *Page 365 
of the State, such delegation of authority should be accompanied by appropriate limitations within which the delegated authority may be exercised, in order to enforce controlling law and to conserve public policy and the general welfare.
The navigable waters within the State and the lands thereunder are held by the State in trust for all the people of the State, subject to the powers of Congress as to navigation. State ex rel. Ellis v. Gerbing, 56 Fla. 503, 47 So.2d 353, 22 L.R.A. (N.S.) 337.
Chapter 11640, Acts of 1925, under a title "to confer power and authority on the Board of County Commissioners of Monroe County, Florida, to grant licenses, privileges and franchises to any persons or corporation, under such conditions and for such a term as the Board of County Commissioners may determine, to construct, operate and maintain toll bridges in Monroe County, Florida, and to connect said toll bridges with the public roads within said county," etc., contains the following:
"Be It Enacted by the Legislature of the State of Florida:
"Section 1. The powers and authority are hereby conferred upon the Board of County Commissioners of Monroe County, Florida, to grant licenses, privileges or franchises to any person, firm or corporation, to construct or operate toll bridges across the waters and streams of Monroe County, Florida, provided, however, before any such bridges are constructed, the permission of the War Department of the United States must first be obtained for the construction and maintenance of said bridges.
"Sec. 2. The Board of County Commissioners shall determine the period of time for which the licenses, privileges and franchises shall exist, provided no such licenses, privileges or franchises shall extend beyond the period of forty years from the date said bridges are placed in operation. *Page 366 
"Sec. 3. The Board of County Commissioners shall have power to determine the conditions under which said franchises, licenses or privileges are granted, and shall have power to require security, from persons receiving said franchises and shall determine the rules and regulations under which said toll bridges shall be operated in the State of Florida."
The franchise granted to the respondent states that:
" 'The County does hereby agree, subject to the approval and granting of permission by the United States War Department for the construction and maintenance of said Toll Bridges, Causeways and/or Fills to grant to the said George J. Rosenthal, his heirs, legal representatives and assigns, and, if approved by the said United States War Department, does hereby grant to the said George J. Rosenthal, his heirs, legal representatives and assigns, the sole and exclusive Franchise, License and Privilege to construct, operate and maintain Toll Bridges, Causeways and/or Fills over and across the waters of Monroe County and State of Florida, from No Name Key, Florida, to Lower Matecumbie, Florida, connecting up the two ends of the State Road 4-A and known as the Oversea Highway as provided in the said plans and routes as approved by the War Department of the United States of America.
" 'Said exclusive Grant, Franchise, License and Privilege shall be construed to mean that no other and/or further Grant, Franchise, License and/or Privilege will be granted to any person, firm or corporation, during the life of this Grant, Franchise, License and Privilege, to build, construct and operate any passenger Ferry, Bridges, Causeways, and/or Fills for the use of the general publis, within a radius of ten miles on either side of the termini of the Bridges, Causeways and/or Fills allowed to be constructed and operated *Page 367 
within the purview of this Franchise. Nor will Monroe County itself, build, construct, maintain and/or operate any Bridge, Causeway, Fills and/or Ferries during the life of this Franchise on or over the waters of the State of Florida and connecting the Oversea Highway with the mainland or any part thereof from No Name Key, Florida, to Lower Matecumbie, Florida, or within the radius of ten miles from the Bridges, Causeways and/or Fills or termini thereof as provided in this Franchise. Provided, however, that Ferries may be operated until such time as the Bridges, Causeways and/or Fills provided for in this instrument shall have been opened to the public."
"And the said county of Monroe hereby permits and allows the said George J. Rosenthal, his heirs, legal representatives and assigns, to construct, build, operate and maintain all public utilities that the said George J. Rosenthal may desire over, under and upon the said Bridges, Causeways and/or Fills, provided the said public utilities, or any of them, shall not interfere with or obstruct the normal flow of traffic over said bridges. And the said George J. Rosenthal, his heirs, executors, administrators or assigns, is hereby granted the right to construct, operate and maintain gradings, and equipment, dredges and dredging equipment over and under said bridges; to construct necessary piling and docks adjacent to said Bridges, Causeways and/or Fills and to construct all things and do all things that by necessary implication would be absolutely essential, incidental and appertaining to the efficient construction, operation and maintenance of said Bridges, Causeways and/or Fills.
"And the said Franchise is hereby issued on the following terms and conditions, to-wit: The said George J. Rosenthal shall furnish to the County a penal bond, on or before six months from date of this Franchise, in the sum of Five Hundred Thousand Dollars ($500,000) conditioned that the *Page 368 
said George J. Rosenthal shall begin actual physical construction of said Bridges, Causeways and/or Fills within ninety days from the date of furnishing of said Bond and shall complete the said Bridges within thirty-six months from the date of the commencing of building operations, unless the same is rendered impossible of strict performance by an Act of God, changing elements, earthquake or the public enemy. Said Bridges, Causeways and/or Fills to be constructed according to plans and specifications hereafter to be submitted by the said George J. Rosenthal and which are to be approved by the United States War Department.
"Provided further, that the said George J. Rosenthal shall agree to and will operate said Bridges, Causeways and/or Fills as toll bridges for the use and benefit of the people of Monroe County, and other members of the traveling public and to maintain said Bridges, Causeways and/or Fills in an efficient manner accommodating all the usual and common traffic of persons, their vehicles and property that may apply for passage over said Bridges, Causeways and/or Fills. 'This said Franchise shall be for a term of forty (40) years, commencing from the time the Bridges, Causeways and/or Fills are completed and opened for use of the general public.'
"The tolls to be charged and collected by the said George J. Rosenthal, his legal representatives, heirs and/or assigns for passage over said Bridges, Causeways and/or Fills shall not exceed the rates embodied in the schedule appended hereto and made a part hereof as though originally incorporated herein.
"Provided, further, that at the end of forty (40) years from the date of the opening of the Bridges, Causeways and/or Fills for the use of the public, the said Bridges, Causeways and/or Fills shall belong to Monroe County, *Page 369 
Florida, free from all charges and shall be in good condition and repair, reasonable depreciation due to time and the elements excepted.
"Provided, however, that in the event the Government of the United States of America or the State of Florida shall purchase said Bridges, Causeways and/or Fills during the life of this Franchise, then, and in that event, Monroe County, Florida, will have and claim no right, title or interest, reversionary or otherwise, in the said Bridges, Causeways and/or Fills from and after the date of sale and transfer by the owner of the Bridges, Causeways and/or Fills, either to the Government of the United States of America or to the State of Florida.
"Further, it is hereby mutually agreed by and between the said County of Monroe, Florida, and George J. Rosenthal that all improvements, buildings, appurtenances, means of transportation and/or communication and which are not directly necessary or essential for the operation and maintenance of the Bridges, Causeways and/or Fills, shall not belong to Monroe County, Florida, at the time of the expiration of the said Franchise but shall be and remain the property of the said George J. Rosenthal, his heirs, legal representatives and assigns.
"Wherever George J. Rosenthal is mentioned in this Franchise, it shall include his heirs, legal representatives and assigns, if the context so requires or admits.
"This Franchise, license or privilege is granted upon the express condition that the grantee herein shall first secure the approval hereof of the State Road Department, of the State of Florida, and the agreement of the State Road Department that the granting of this franchise shall in no way interfere with the present State maintenance of Florida State Road 4-A."
The authority conferred by the statute is upon "the Board *Page 370 
of County Commissioners of Monroe County, Florida." The franchise is granted by "the County," which does not accord with the authority conferred, and renders the franchise inoperative.
The franchise purports to grant an exclusive franchise, and to expressly exclude other franchises and the county from operating any passenger, ferry, bridges, causeways or fills for the use of the general public, within a radius of ten miles on either side of the termini of the bridges, causeways and fills authorized by this franchise, and to construct, operate and maintain all public utilities desired by the grantee upon the bridges, causeways and fills authorized, and to retain same after the forty years' limitation of the franchise.
Even if the Legislature may, without prescribing definite and appropriate limitations and restrictions to enforce the controlling law and to conserve the interests of all the people of the State, confer upon the board of county commissioners of a county the authority stated in the franchise, the title of the Act does not express such a subject and the Act does not indicate such a purpose or so provide.
The statute does not authorize exclusive franchises to be granted. Authority to impose conditions does not enlarge the authority conferred or authorize exclusive franchises.
One of the conditions of the franchise granted is that it shall be first approved by the State Road Department, and such approval had been denied. Without such approval the franchise, if otherwise valid, never became effective as a grant.
If the county commissioners illegally prevented the approval of the franchise by the State Road Department, that does not remedy the failure to obtain the required approval as a prerequisite to the validity of the franchise, and the remedy of the grantee, if any, for the acts of the county *Page 371 
commissioners, is against them, the State not being responsible for their conduct.
Even if after granting the franchise, the county commissioners had authority to extend the time for filing the "penal bond" which was made a condition of the grant, the personal bond of the grantee alone, which was filed, is not the character of a "penal bond" contemplated by the grant or the "security" required by the statute under which the franchise grant was made.
A reasonable time for procuring the permission of the United States War Department for the construction and maintenance of the proposed bridge has elapsed, and no such permission is shown and no excuse for delay is shown, even if, by the terms of the franchise, such permission is not a condition precedent to the grant of the franchise.
The broad authority and prerogatives attempted to be granted by "the" to the respondent are not authorized by the statute and are contrary to public policy and to the rights of the people of the State.
Chapter 15023 and Section 8 of Chapter 15024, Acts of 1931, contemplate valid grants of franchises; and do not, if they could, validate the franchise claimed by the respondent. Chapter 15060, Acts of 1931, violates Section 1, Article IX, of the Constitution of Florida.
We are of the opinion that the motion to quash the writ ofquo warranto should be denied; and upon considering the cause upon the return of the respondent, a judgment of ouster is entered.
DAVIS, C. J., and CAMPBELL, Circuit Judge, concur.
TERRELL and BROWN, J. J., agree to the conclusion.
BUFORD, J., dissents.